UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL LEE ELLIOTT,

        Petitioner,

                                            Case No. 14-13735
v.                                HON. TERRENCE G. BERG

SHERRY BURT,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, GRANTING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

      This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Samuel Lee Elliot was convicted after a jury trial in the Jackson Circuit Court of armed robbery pursuant to Mich. Comp. Laws § 750.529. Petitioner was sentenced as a fourth-time habitual felony offender to a term of 15-to-30 years. The petition raises one claim: that Petitioner's Fifth Amendment right against self-incrimination was denied when the trial court admitted Petitioner's confession to a parole officer. The Court will deny the petition because the state court adjudication of this claim did not involve an unreasonable application of clearly established Supreme Court precedent. The Court will, however, grant Petitioner a certificate of appealability and permission to proceed on appeal in forma pauperis.

## I. FACTUAL BACKGROUND

The facts as stated by the Michigan Supreme Court are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are:

> In 2006, defendant was convicted of unarmed robbery in violation of MCL 750.530, and the trial court sentenced him to serve a prison term of 3 to 15 years. In February 2010, at the discretion of the parole board, defendant was granted parole and provisionally released from prison. Upon release, defendant was placed under the supervision of a parole officer and required to abide by certain conditions of parole. These conditions included that defendant not engage in behavior that constitutes a violation of any federal, state, or local law, that he not use or possess controlled substances, and that he follow the parole officer's instructions and report as required by the officer.
>
> On June 17, 2010, defendant was taken into custody by police pursuant to a warrant for failing to report, and the next day, his parole officer, Jason Golightly, served defendant with a notice of parole violation pertaining to that failure. On the same day, after advising defendant of his *Miranda* rights, detectives of the Jackson Police Department questioned defendant concerning a robbery that had occurred at approximately 4:00 a.m. on June 16, 2010, at a Jackson gas station. After voluntarily answering several questions, defendant requested an attorney. The police then discontinued the interrogation.
>
> On June 21, 2010, while defendant was still incarcerated, his parole officer was on vacation, so another officer, Cheryl Evans, went to the jail to serve defendant with an amended notice of parole violation that identified three additional parole violations, one of which related to the June 16 robbery. Evans testified as follows regarding what occurred at the jail:
>
>> Q. And what, exactly does ["serve him parole violation charges and get his statement"] mean? What do you do? What's the process when that happens?
>>
>> A. When a person is served with a parole violation charge, when we determine they -- or we believe they have

2

violated a condition of their parole, we have charges made up. They're on a piece of paper.

We then go and meet with the person. We serve them the charges, which means I say "Count I," "Count II" -- or, for him, it was Count -- it was an additional count, so it was Count III, Count IV, Count V. And then I review it with him. I ask him for a statement. We talk a little bit. And then he decides whether he signs the bottom -- not saying he's guilty -- just signs that he received the charges.

Then he's offered a preliminary parole violation hearing, which is a probable cause hearing. And, again, he waived that, but waiving that does not admit he's guilty. It's just that he's waiving the preliminary hearing.

Q. So, did you do all this with the Defendant?

A. Yes.

Q. And did he give you a statement?

A. Yes, he did.

Q. Did one of the charges have to do with the robbery at the Admiral gas station?

A. Yes.

Q. Did he give you a statement as to those charges?

A. Yes.

Q. And what did he say?

A. We talked generally about everything that was going on and he said that he'd been having a rough time. He said that he was living with his cousin, Laurie Brooks, who has a couple of kids, and that he felt -- he wasn't able to get a job and hold a job -- and he felt that he was putting a lot of financial stresses on her. And he also said, you know, he, himself, got a little stressed about it and was having a lot of trouble adjusting and he slipped and started using his cocaine again.

3

> And he said he went into the Admiral gas station. He told me that he walked in there to the clerk, asked the clerk for some cigarettes. The clerk turned around to get cigarettes. As the clerk turned around -- he actually showed me what he did -- he leaned forward like this onto the counter and told the guy in a low voice to -- told him to give him the money and he wouldn't get hurt, and then he said the guy gave him the money and he left.
>
> Relevant here, the meeting between Evans and defendant took place in the jail library and lasted approximately 15 to 25 minutes. Evans did not inform defendant of his *Miranda* rights or tell defendant that he was not required to speak to her absent a lawyer being present. According to Evans, during the meeting, defendant told her that he had submitted a letter indicating that he wished to talk to the police again, and at the end of the meeting, defendant asked Evans to convey to the police that he wished to speak to them.
>
> Defendant was eventually charged with armed robbery for the gas station incident, and he was tried before a jury. At the beginning of trial, defendant moved to suppress Evans's testimony regarding defendant's confession, arguing that it was improperly obtained because defendant had not been informed of his *Miranda* rights and because defendant had previously requested counsel. After conducting a hearing, the trial court determined that Evans had not been acting in concert with law enforcement officials and that Evans was not herself a law enforcement officer obligated to give *Miranda* warnings. Accordingly, the court denied defendant's motion and admitted Evans's testimony regarding defendant's confession. The jury convicted defendant of armed robbery, and he was sentenced as a fourth-offense habitual offender to a prison term of 15-30 years.

*People v. Elliott,* 494 Mich. 292, 296-299 (2013) (footnotes omitted).

Following his conviction and sentence, Petitioner appealed in the Michigan Court of Appeals, raising the same issues that form the basis of his habeas claim. The Michigan Court of Appeals reversed Petitioner's conviction in a unanimous

decision, finding that Petitioner's *Miranda* rights were violated by admission of his confession to Evans. *People v. Elliott*, 295 Mich. App. 623 (2012).

The prosecutor filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court granted the application and reversed the decision of the court of appeals in a 5-to-2 decision. The majority opinion concluded that Petitioner was not in custody for *Miranda* purposes during his interaction with the parole officer, and therefore his Fifth Amendment rights were not implicated. *Elliott*, 494 Mich. at 305-322.

Petitioner sought relief in the United States Supreme Court, but his petition for a writ of certiorari was denied. *Elliot v. Michigan*, ___ U.S. ___ ; 134 S.Ct. 692; 187 L. Ed. 2d 559 (2013).

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d) sharply curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas corpus action if the claims were rejected on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from

5

[this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

Demonstrating that a state court unreasonably applied clearly established Supreme Court law is no easy task because "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

6

### III.  ANALYSIS

Petitioner claims that his Fifth Amendment right against self-incrimination was violated when the parole agent failed to *Mirandize* him prior to questioning him regarding the armed robbery and because he had previously terminated a police interrogation by requesting counsel. The claim divided the state courts. The trial court rejected the claim when it denied Petitioner's motion to suppress his confession. The Michigan Court of Appeals then reversed his conviction in a unanimous decision. The Michigan Supreme Court granted leave to appeal, and reversed the decision of the court of appeals. Four of the seven state Justices found that under U.S. Supreme Court precedent, Petitioner was not in custody at the time of his interaction with the parole officer, and therefore his Fifth Amendment rights were not triggered. The state Chief Justice concurred in the result on the basis that Petitioner waived his rights when he sent a letter to the police requesting to speak with them after his first interrogation. The other two state Justices dissented, finding that Petitioner was unconstitutionally subjected to a custodial interrogation after he had previously invoked his right to counsel.

This otherwise contentious case demonstrates the impact § 2254(d) has on review of state court adjudications. In order for Petitioner to prevail in this action, it is not enough to convince the Court that the Michigan Court of Appeals and the dissenting Justices of the Michigan Supreme Court got it right and his constitutional rights were violated. Rather, Petitioner must point to clearly established Supreme Court precedent that not only supports his claim, but also

7

shows that the state court's rejection of his claim fell beyond any possibility for fair-minded disagreement. *Harrington*, 562 U.S. at 103. And if the back-and-forth debate in the state courts shows anything, it is that the United States Supreme Court's *Miranda* jurisprudence is not so clear that that all fair-minded jurists reviewing Petitioner's claim would necessarily be compelled to grant relief.

It is clearly established that the Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination. In *Miranda v. Arizona*, the Supreme Court held that the prohibition against compelled self-incrimination requires a custodial interrogation to be preceded by advice that the accused has the right to an attorney and the right to remain silent. 384 U.S. 436, 479 (1966). The key in this case is the "custody" portion of the custodial interrogation condition. If an accused is not in custody as that term has been defined by the Supreme Court, his Fifth Amendment protection against compelled self-incrimination is not implicated. *See, e.g., Illinois v. Perkins*, 496 U.S. 292, 296-297 (1990) (prisoner who speaks with an undercover officer in his prison cell, believing him to be a fellow prisoner, is not in custody for *Miranda* purposes and is not entitled to its protections).

The United States Court of Appeals for the Sixth Circuit, applying § 2254(d), recently set forth the clearly established Supreme Court standard for determining whether a jailed suspect who is questioned regarding another offense is in custody for *Miranda* purposes:

> "[I]mprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." *Howes v. Fields*, 132 S.

8

> Ct. 1181, 1190, 182 L. Ed. 2d 17 (2012). Rather, whether incarceration constitutes custody for *Miranda* purposes 'depends upon whether it exerts the coercive pressure that *Miranda* was designed to guard against—the danger of coercion [that] results from the interaction of custody and official interrogation. To determine whether a suspect was in *Miranda* custody we have asked whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. This test, no doubt, is satisfied by all forms of incarceration. Our cases make clear, however, that the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody.' *Shatzer*, 559 U.S. at 112 (internal quotation marks and citations omitted). The 'determination of custody should focus on all of the features of the interrogation,' including 'the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted.' *Fields*, 132 S. Ct. at 1192.

*Holland v. Rivard*, 800 F.3d 224, 237-238 (6th Cir. 2015).

In *Fields,* which *Holland* relied on, the Supreme Court reversed the Sixth Circuit's ruling on a habeas corpus petition and found that the habeas petitioner had not been subjected to custodial interrogations despite the fact that he was in prison when he was sharply questioned by police officers for hours about a different crime. The Court rejected the categorical rule that "the questioning of a prisoner is always custodial when the prisoner is removed from the general prison population and questioned about events that occurred outside the prison." *Id*. at 1187. In addition to noting that prior Supreme Court decisions did not support such a rule, the Court clarified that restraint on freedom of movement alone is not determinative of custody. Rather, the environment must "present[] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. at 1189-90. The Court cited three reasons for concluding that

9

imprisonment is not inherently custodial under *Miranda*. First, a prisoner is already incarcerated, so there is no "shock" from the possibility of arrest that generally arises during police station interrogations. *Id*. at 1190. Second, a person who is already incarcerated is unlikely to be "lured into speaking by a longing for prompt release." *Id*. Finally, "a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." *Id*. at 1191. Instead, a court should focus on all of the circumstances of the interrogation. *Id*. at 1192.

*Fields* sets the bar Petitioner must clear to show he was subjected to a custodial interrogation. Not only that, Petitioner must clear the bar by such a wide margin that it falls beyond any possibility for fair-minded disagreement to conclude that in Petitioner's case, he *was* in custody for *Miranda* purposes even though the Supreme Court held that in Fields' case, he was not The difficulty in overcoming this hurdle becomes clear in light of the Michigan Supreme Court majority opinion's comparison of the interaction between Petitioner and the parole officer with the interaction between Fields and the police officers:

> In viewing the totality of circumstances in *Fields* and in the present case, we believe that if there was no custodial interrogation in the *Miranda* sense in *Fields*, there was certainly no custodial interrogation in the instant case. In *Fields*, the defendant was questioned by armed police officers; here, defendant was questioned, if you can even call it that, by an unarmed parole officer. In *Fields*, the defendant was questioned by armed police officers who were trying to obtain a confession from the defendant; here, defendant met with an unarmed parole officer who was there for the principal purpose of serving defendant with an amended notice of parole violations. In *Fields*, the defendant was questioned by armed police officers for about 5

10

> to 7 hours; here, defendant met with an unarmed parole officer for 15 to 25 minutes. In *Fields*, the armed police officers used a "sharp tone" and "profanity" while questioning the defendant for several hours; here, the unarmed parole officer was altogether cordial and sympathetic with defendant during their brief meeting. In *Fields*, the armed police officers continued to question the defendant until well past his regular bedtime; here, the unarmed parole officer did not keep defendant up late at night. In *Fields*, the defendant repeatedly stated that he did not want to talk to the armed police officers; here, defendant never indicated in any manner that he did not wish to talk to the unarmed parole officer. We believe it is clear that the totality of circumstances in *Fields* far more closely resembles the kind of custodial interrogation that generated the extraordinary protections of *Miranda* than does the totality of circumstances in the present case-- yet even in *Fields*, such circumstances were viewed by the United States Supreme Court to be insufficient to trigger the requirements of *Miranda*.

*Elliott*, 494 Mich. at 314-315.

Whether this Court agrees with this analysis is irrelevant under §2254(d). And whether this Court is persuaded by the dissenting opinion's rationale for distinguishing *Fields* is also irrelevant.[1] The only question is whether this list of comparisons made in the majority opinion of the Michigan Supreme Court that persuaded it to place Petitioner's case on the not-in-custody side of the line are so unreasonable, so inapposite, that any fair-minded and reasonable jurist would be

---

[1] The dissenting opinion found the interaction in this case to be more inherently coercive than in *Fields*. The dissent noted that the petitioner in *Fields* was interviewed in his accustomed day-to-day home in prison, whereas Petitioner was recently incarcerated in jail. It also found that the custodial environment established during Petitioner's first police interview when he invoked his rights was never broken, a factor not present in *Fields*. Furthermore, the dissent noted that the petitioner in *Fields* was told he was free to leave the interview, but Petitioner was not. Finally, the petitioner in *Fields* never invoked his *Miranda* rights, whereas Petitioner had done so and requested counsel three days earlier. 494 Mich. at 326-334 (McCormack, J., dissenting).

11

compelled to disagree with them. But it is enough to simply read the passage quoted above to find that the decision of the Michigan Supreme Court survives § 2254(d) review. Whether correct or not, the majority opinion is a fairminded and thorough analysis of the claim. The Court carefully compared the features of the interaction between Petitioner and the parole officer to those that occurred in the *Fields* case and then concluded that if Fields was found not to have been subjected to a custodial interrogation, neither was Petitioner.

Under § 2254(d) it is not necessary, nor is it even relevant, for this Court to express any opinion on the underlying question of whether Petitioner was subjected to a custodial interrogation. The only inquiry is whether the state court's conclusion that Petitioner was not in custody when he spoke with the parole officer represents a reasonable application of clearly established Supreme Court precedent. Simply stated, the constitutional question before the state court was not so obvious that it was "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Accordingly, review of Petitioner's claim is barred by § 2254(d), and his petition will be denied.

## IV. CERTIFICATE OF APPEALABILITY

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner,

or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason could debate whether the petition should have been resolved in a different manner. The Michigan Court of Appeals and two Justices of the Michigan Supreme Court found Petitioner's claim to be meritorious. The Court will therefore grant a certificate of appealability. The Court will also grant permission to appeal in forma pauperis because any appeal of this decision can be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.  CONCLUSION

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **GRANTS** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated:  April 28, 2016                              s/Terrence G. Berg
                                                    TERRENCE G. BERG
                                                    UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on April 28, 2016, using the CM/ECF system; a copy of this Order was also mailed to the Muskegon Correctional Facility, 2400 S. Sheridan, Muskegon, Michigan 49442 directed to Petitioner's attention.

                                                    s/A. Chubb
                                                    Case Manager